FILED

17 MAY 22 PM 12:58

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-13005-2 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON FOR KING COUNTY

| | | |
|---|---|---|
| HERMAN  CHARLES TELLIS, Plaintiff | ) | NO. |
| VS | ) | |
| ALASKA AIRLINES, a foreign corp., | ) | JOB DISCRIMINATION COMPLAINT: AGE |
|     DEFENDANT | ) | DISCRIMINATION AND RETALIATION |
| _____ | ) | |

## I.  JURISDICTION AND VENUE

1.  At the times material to the complaint, Plaintiff Tellis, a resident of King County, Washington, worked for

defendant Alaska Airlines at its facilities in King County, Washington.

2.  Defendant Alaska Airlines ("Alaska") is a foreign corporation owning and operating commercial

airplanes, hangers, and terminals in King County, Washington.  Defendant Alaska employs more than

twenty persons.  Defendant Alaska is an employer subject to the provisions of Washington's Law Against

Discrimination (WLAD) (RCW 49.60).  Defendant Alaska is an employer subject to the provisions of the

Age Discrimination in Employment Act and Older Workers Benefits Protection Act. (29 USC 623(a)(1))

3A.   Tellis exhausted his administrative remedies by filing EEOC claim No 551 2013 01596 against

Alaska Airlines, charging age and opposition discrimination (Exhibit 1 to the Complaint).  The claim both

remains open for further EEOC action and has been discontinued in reliance upon EEOC giving effect to a

coerced and involuntary and unlawful settlement agreement which was signed in violation of OWBPA 29

USC 626(f)(1)(G)

3B.   The court has concurrent jurisdiction of the parties and subject matter.  Venue is properly in this court.

## II.  FACT STATEMENT

4.     Plaintiff Herman Charles Tellis ("Tellis") was hired by Alaska Airlines ("Alaska") in its Maintenance and Engineering division as an aircraft mechanic ("M&E mechanic") in approximately January, 1990.  Tellis has performed his duties capably and,  at time, exceptionally.

5.     PRE-LIMITATIONS PERIOD HISTORY OF REPEATED UNLAWFUL EMPLOYMENT TERMINATION;  LAWSUIT AND EEOC AND UNION FILINGS OPPOSING UNLAWFUL RACE AND AGE DISCRIMINATION.

5.1     Tellis filed King County cause no 96-2-20846-9 SEA opposing unlawful termination effective Sept. 3, 1993 because of racism.  Coworkers Montjoy and Petrie collaborated with the Alaska management team to provoke Tellis to a fight, calling him a "Black skunk;" a "Black SOB" and "Lazy N**".  The sworn testimony of   Alaska managers asserted he "thinks because he is Black we can't fire him" and "we finally got the "N**" fired."    Alaska re-instated Tellis' employment in 1996.

5.2     Effective March 14,2000, Alaska falsely accused Tellis of fighting because he had previously opposed discrimination.  Tellis' union filed grievance # 200614 asserting that the firing was pretext, without good cause.  Tellis was reinstated by company directive dated March 17, 2000.

5.3     Tellis filed EEOC case no. 380A10933; 380A 10922  on or about August 1, 2001 to oppose Alaska's termination decisions effective July 18, 2000 and Sept 27, 2000.  Alaska had first fired Tellis in July for absenteeism without notice; a false claim made because of Tells' prior age and race claims in spite of a  written Alaska FMLA approval notice that had granted him leave during the period July 5 to Sept 26, 2000.  Alaska reinstated Tellis effective September 26th.   On October 17,  2000, because he had opposed discrimination and because of race and age discrimination, Tellis was fired again.  Tellis' union filed grievance 200604 asserting that the firing was pretext, without good cause.   Tellis was reinstated by company directive dated August 1, 2002.

5.4      During 2005, Tellis opposed unlawful racial discrimination and retaliation in his

maintenance and engineering division work group team meetings because an employee had posted on a

public notice board the ID tag of a Kenyan mechanic superimposed upon the photograph of a monkey.

5.5.    Effective May, 2009, Tellis filed his internal Employee Complaint Review ("ECR") asserting

that the FLYWHEEL financial award and recognition had been issued to every member of his TRAX

implementation team besides Tellis, because of Tellis' race and age (over 40) and prior opposition

conduct.

5.6    Tellis opposed agism and retaliation in March 2012 when one of his racial antagonists,

Montjoy, whose racial fighting words were depicted in King Count Cause No. 96-2-20846-9, was

reassigned by managers to assign tasks and rate the performance of Tellis.  Reiterating what managers

asserted against Tellis in connection with the 1996 lawsuit, Montjoy recorded in Tellis' file that he was

"lazy" and acted "bulletproof."

5.7    Tellis opposed agism and retaliation on February 6, 2013, when attending a scheduled

conference with Alaska' anti-discrimination consultant Marcella Fleming Reed to give testimony about his

complaint.  Because Tellis had historically opposed conduct made unlawful by WLAD and ADEA, and

because Tellis had been taken by paramedics to the hospital with blood pressure 175/100 after being

confronted by managers and physically restrained from leaving a small enclosed space in January,

5.8    Tellis was notified on February 6th he would be fired if he did not submit a signed resignation.

Tellis signed a resignation agreement and release agreement with Alaska on February 8th, with a signed

resignation as exhibit 1. On February 8, Tellis executed his revocation of the agreement pursuant to

mandatory terms of the contarct.   In spite of revocation pursuant to contract, and in violation of 29 USC

626(F(1)(G)[1]

---

[1] 29 USC 626 (f)(1)(G) requires
A waiver may not be considered knowing and voluntary unless at a minimum . . . the agreement
provides that for a period of at least 7 days following the execution of such agreement, the

5.8  Tellis repeatedly requested reassignment to his regular shift so as to exercise rights to be free from discrimination guaranteed by 29 USC 623(a)(d).    Alaska continuously barred Tellis from the worksite without pay commencing May 10, 2013.

5.9   Tellis opposed unlawful discrimination, barring him from work, on October 24, 2013  by serving upon Alaska a Lawsuit Complaint (unfiled) asserting that in barring Tellis from work under a revoked resignation agreement, Alaska discriminated against Tellis because of age and opposition conduct.

5.10   On March 31, 2014, Tellis filed EEOC claim no. 551 -2013-001596 (Tellis v Alaska) alleging age and opposition discrimination.

CURRENT CLAIM

6.     By coercive action, motivated by age bias and retaliation, Alaska misled Tellis and coerced Tellis to sign on May 13 2014 a legally invalid and involuntary waiver of ADEA and other claims (Complaint Exhibit 3, ¶4.1-4.7) for "wages" owed since an unlawful employment bar was imposed commencing May 10, 2013. By way of illustration and without limitation  Alaska violated the law against age discrimination and retaliation as follows:

6a.   coercing Tellis involuntary forfeiture of Age Discrimination in Employment Act claims arising from the biased actions barring him from the workplace, without furnishing a 7-day revocation period in violation of 29 USC 626(f)(1)(G)

6b    Wilfully and deliberately forfeiting Tellis' claims because of age bias and the exercise of guaranteed rights without permitting a revocation interval.  This is based upon Tellis having exercised his revocation rights when offered in 2013; and Alaska penalizing his exercise of such revocation by imposing

individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired.

the resignation terms of the resignation agreement upon a revoked agreement so as to bar Tellis from

further employment without pay effective May 10, 2013;

6c   penalizing Tellis for purporting to exercise rights guaranteed by ADEA by demanding in

settlement an unlawful surrender and cancellation of Tellis' right to file suit until he tenders back settlement

proceeds, in explicit violation of the terms of  29 CFR 1265.23(a)

6d   penalizing Tellis for purporting to excercise his ADEA rights by demanding in  settlement an

unlawful penalty in violation of  29 CFR 1265.23(b) that required Tellis to pay Alaska's counsel fees

incurred in defending a claim to void an unlawful settlement agreement.

6e capping Tellis' continuing backpay recovery after 12 calendar months of employment bar,

under the revoked 2013 agreement,  based upon an inherently coercive and unenforceable 2014

agreement;

6g undercounting the compensation due for "wages" pursuant to the unlawful 2014 agreement in

the amount of bonus compensation owed during calendar year 2013.

7.     The "effective date" for imposing the invalid 2014 settlement (EEOC dismissal) [Ex 3 ¶4.4] has been

obstructed by Alaska's unlawful conduct–imposing unenforceable settlement terms against Tellis that

prevent EEOC from dismissing the charge of age bias.

8.      Alaska continues to bar Tellis from employment in violation of guaranteed rights.

<u>III.  CLAIMS FOR RELIEF</u>

FIRST CLAIM: AGE DISCRIMINATION

9.  Plaintiff Tellis  restates paragraphs 1-8

10. Tellis waiver of rights under ADEA was not knowing and voluntary and his corresponding June 4, 2014

agreement to release and convenant not to sue is void and unenforceable.

11.   The effective date to trigger Tellis' waiver of rights under ADEA has been obstructed by the conduct of Alaska Airlines in seeking to enforce and involuntary ADEA waiver

12   Tellis' rights to keep the consideration paid and file suit under ADEA anti-clawback regulations and ADEA anti-penalty regulations has been penalized.

13   Defendants' conduct in denying a revocation period was wilful, because Tellis had exercised the revocation rights in connection with revoking a 2013 agreement.

14   Alaska has continuously barred Tellis from resuming work using diverse and unlawful means including failing to restore employment under a revoked resignation agreement and failing to restore employment pursuant to a legally invalid and involuntary and wilfully involuntary 2014 agreement.

15.   Alaska has underpaid the "wage" consideration promised in the 2014 settlement (Ex 3) by an amount equal to the 2013 bonus compensation formula.

16.   As a proximate cause of defendant's unlawful actions plaintiff has been denied the underpaid wage and continuing wages, regular increases,  fringe benefits,  job opportunities and other benefits which he would have received had his employment not been unlawfully barred.   Also, Tellis has suffered and continues to suffer fear, humiliation, anxiety, distress, and lost enjoyment of life.

SECOND CLAIM:  RETALIATION

17      Plaintiff Tellis restates paragraphs 1-16

18      For the reasons stated in paragraphs 1-16, Defendant Alaska has violated the ADEA anti-retaliatory action provisions.

## IV. RELIEF

19   . Plaintiff Tellis prays for a remedy  including without limitation;

    (1)   For the damages proximately caused as pled in the complaint

(2)   For affirmative equitable relief which prohibits Defendants from discriminating and retaliating

in the future;

(3)  for liquidated special damages, including back pay;

(4) for prejudgment interest on liquidated amounts;

(5)  for actual damage, including inwardly felt pain and outward humiliation;

(6) for punitive damage on the basis of deliberate wilful misconduct

(7) for reimbursement of reasonable counsel fees pursuant to 29 USC and contract;

(8) for reimbursement of taxable and actual costs;

(9)  for such other relief as the court deems just.

DATED:        May 8 2017

MICHAEL A. JACOBSON, WSBA # 13135
ATTORNEY FOR PLAINTIFF TELLIS
119-1st AVENUE SOUTH, #200
SEATTLE, WA  98164
206 447 1560

TELLIS EXHIBIT 1

3

551-2013-01596 Herman Tellis

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**

Last Name: Herman    First Name: Tellis    MI: C

Street or Mailing Address: 4816 South 215th Street    Apt or Unit #:

City: Kent    County: King    State: WA    Zip: 98032

Phone Numbers: Home: (206) 8504682    Work: ( )

Cell: ( )    Email Address: hermantellis@gmail.com

Date of Birth: March 10, 1960    Sex: ☒ Male ☐ Female    Do You Have a Disability? ☐ Yes ☒ No

Please answer each of the next three questions.  i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race?  Please choose all that apply. ☐ American Indian or Alaskan Native  ☐ Asian  ☐ White
☒ Black or African American  ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)?

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You

Name: Jane Tellis    Relationship: Spouse

Address: 4816 South 215th Street    City: Kent    State: WA    Zip Code: 98032

Home Phone: ( )    Other Phone: (206) 6813255

**2. I believe that I was discriminated against by the following organization(s)** (Check those that apply)

☒ Employer  ☐ Union  ☐ Employment Agency  ☐ Other (Please Specify)

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: Alaska Airlines Inc

Address: 19300 International Blvd S.    County: King

City: Seattle    State: WA Zip: 98188    Phone: (206) 4333200

Type of Business:    Job Location if different from Org. Address:

Human Resources Director or Owner Name:    Phone: ( )

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15  ☐ 15 - 100  ☐ 101 - 200  ☐ 201 - 500  ☒ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☐ No

Date Hired: Jan 15, 1990    Job Title At Hire: Airframe & Powerplant (A&P) Mechanic

Pay Rate When Hired:    Last or Current Pay Rate:

Job Title at Time of Alleged Discrimination: A&P Mechanic    Date Quit/Discharged: Feb 8, 2013

Name and Title of Immediate Supervisor:

If Job Applicant, Date You Applied for Job    Job Title Applied For

1

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race   ☐ Sex   ☒ Age   ☐ Disability   ☐ National Origin   ☒ Retaliation   ☐ Pregnancy   ☐ Color (typically a difference in skin shade within the same race)   ☐ Genetic Information: circle which type(s) of genetic information is involved: i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

_____

Other reason (basis) for discrimination (Explain): _____

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed. *(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)* In retaliation for revoke of 2/13/13 ADEA settlement, concealed fact from

A. Date: Apr 13, 2012 ___ Action: 4/12/13 till I discovered on or about 11/5/13 that grievance 031 failed statute of limitations, I was denied reinstatement (stemming from constructive discharge) in violation of CBA.

Name and Title of Person(s) Responsible: Greg Mays, VP Maintenance & Engineering AS (Alaska Airlines)

B. Date: Nov 12, 2013 ___ Action: In retaliation for revoke of 11/12/13 ADEA, continually denied benefits, pay, blocked email access (hindering communications on retirement info., etc), is holding tools and personal effects.

Name and Title of Person(s) Responsible Herman Wacker Deputy General Counsel, Managing Director Legal, AS

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

1. My age protected class, status
2. Retaliation for twice revoke of ADEA: (2/13/13 and 11/12/13)

**7. What reason(s) were given to you for the acts you consider discriminatory?** By whom? His or Her Job Title?

Fact that Alaska Airlines concealed fact to undermine reinstatement, denied benefits, etc., provides reasoning for acts I consider discriminatory.

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. | | | |
| | | | |
| B. | | | |
| | | | |

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|-----------|--------------------------------------------------------|-----------|--------------------------|

A._____

_____

_____

B._____

_____

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|-----------|--------------------------------------------------------|-----------|--------------------------|

A._____

_____

_____

B._____

_____

Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability.  If not, skip to question 13.  Please tell us if you have more than one disability.  Please add additional pages if needed.

9.  Please check all that apply:
☐ Yes, I have a disability
☐ I do not have a disability now but I did have one
☐ No disability but the organization treats me as if I am disabled

10.  What is the disability that you believe is the reason for the adverse action taken against you?  Does this disability prevent or limit you from doing anything?  (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

_____

_____

_____

11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?
☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?

_____

_____

12.  Did you ask your employer for any changes or assistance to do your job because of your disability?
☐ Yes ☐ No

If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask?  (Provide full name and job title of person)

_____

Describe the changes or assistance that you asked for: _____

_____

_____

How did your employer respond to your request? _____

_____

3

13.  Are there any witnesses to the alleged discriminatory incidents?  If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|
| A. | | | |
| B. | | | |

14.  Have you filed a charge previously on this matter with the EEOC or another agency?  ☐ Yes  ☒ No

15.  If you filed a complaint with another agency, provide the name of agency and the date of filing: _____

16.  Have you sought help about this situation from a union, an attorney, or any other source?  ☒ Yes  ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Was advised to contact EEOC

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.  If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws.  If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1.  If you want to file a charge, you should check Box 2.

BOX 1   ☐ I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  I also understand that I could lose my rights if I do not file a charge in time.

BOX 2   ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above.  I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____             March. 31, 2014
Signature                                                     Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1)  FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY.  42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a)
3)  PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.  4) ROUTINE USES.  EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.  5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2008

4

TELLIS EXHIBIT  2

EEOC Claims
Release



**U.S. Equal Employment Opportunity Commission**
**Seattle Field Office**

909 First Avenue
Suite 400
Seattle, WA 98104
(206) 220-6884
TTY (206) 220-6882
FAX (206) 220-6911

Herman C. Tellis
4816 S. 215th Street
Kent, WA 98032

Re:    Herman C. Tellis vs. ALASKA AIRLINES, INC.
       EEOC No: 551-2013-01596

Dear Mr. Tellis:

In view of the agreement reached between you and ALASKA AIRLINES, INC., the Equal Employment Opportunity Commission (EEOC) will take no further action on this charge.

The EEOC will discontinue processing the above noted charge. This action does not reflect any judgment by the EEOC as to the merit of the charge or the terms of the settlement. Furthermore, the EEOC does not waive its right to process any other charge, including a charge filed by a Commissioner of the EEOC, or to institute a directed Age Discrimination in Employment Act (ADEA) or directed Equal Pay Act (EPA) investigation of the respondent.

On Behalf of the Commission:

JAN 2 8 2015

_____
Date

_____
Nancy A. Sienko
Director



TELLIS EXHIBIT 3

CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT

This Confidential Settlement and Release Agreement of Claims ("Agreement") is entered into by and between Alaska Airlines, Inc., including its subsidiaries, affiliates, and parent companies, past and present, collectively referred to herein as "Alaska," and Mr. Herman Charles Tellis (collectively referred to as "Parties") to set forth the terms and conditions of their agreement.

AGREEMENT

NOW THEREFORE, in exchange for the mutual consideration described herein, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.     Consideration. Alaska agrees to provide Mr. Tellis the total gross sum of Seventy Thousand Eight Hundred Seventy Dollars ($70,870.00), payable in two installments. The first installment shall be in the gross amount of ($50,000.00) payable within ten (10) business days of the Effective Date of this Agreement; and the second installment shall be in the gross amount of $20,870.00 payable on or before December 31, 2014. Both installment payments shall be characterized as wages, from which normal payroll deductions will be withheld. Mr. Tellis is solely responsible for all tax consequences associated with the payment.

~~1.1    Travel. Alaska agrees to provide Mr. Tellis with eight (8) one-way, space-available travel passes ("guest passes"). The guest passes may be used by Mr. Tellis on Alaska and Horizon airline flights, shall expire December 31, 2014, and their use shall be governed by the Employee Travel Policy.~~

2.     Complete Release of All Known and Unknown Claims. In exchange for the consideration provided, Alaska and Mr. Tellis and their successors and assigns forever release and discharge Alaska and any of its related entities or affiliates (with the exception of Aircraft Mechanics Fraternal Association, Local 14), and all of their respective investors, partners, officers, directors, trustees, agents, insurers, employees, employees' spouses (including successors and assigns), and parent companies, including Alaska Air Group (collectively "Released Parties"), from any and all claims, actions, causes of action, rights, or damages (including claims for wages, bonuses, sick leave, or paid-time-off benefits), including costs and attorneys' fees ("Claims") which Mr. Tellis may

1

DWT 23918586v1 0019272-000271

have, known, unknown, or later discovered, which arose prior to the date Mr. Tellis signs this Agreement.

**3.** Covenant Not to Sue. As a condition of receiving any payments under this Agreement, Mr. Tellis agrees to promptly request the Equal Employment Opportunity Commission to withdraw his pending Charge No. 551-2013-01596 and issue a Notice of Closure of the charge. Mr. Tellis agrees not to pursue any legal action (including but not limited to filing a complaint, lawsuit, grievance, and/or charge), in any forum (including but not limited to court, government agency, union grievance, and/or arbitration process), to assert a Claim that was released in this Agreement, against Alaska or any Released Party. However, this paragraph will not limit Mr. Tellis from filing a Claim to enforce the terms of this Agreement and shall not apply to ADEA Claims if applying it would violate the ADEA. If any government agency brings any claim or conducts any investigation against Released Party, Mr. Tellis waives and agrees to relinquish any damages or other individual relief that may be awarded as a result of any such proceedings.

**4.** Older Workers Benefits Protection Act/Effective Date. Mr. Tellis acknowledges and agrees that the following requirements have been met:

> 4.1. This Agreement is written in language that is readily Understandable and Mr. Tellis understands its contents.
>
> 4.2. Mr. Tellis understands that he is relinquishing any claim for age discrimination under the federal Age Discrimination in Employment Act, which he might assert as of the date of the Agreement.
>
> 4.3. Mr. Tellis is informed that he should consult an attorney regarding the Agreement if that is his wish and he has been given an ample opportunity to do so.
>
> 4.4. This Agreement and the release of ADEA discrimination claims will not be effective until Alaska has both received a copy of the Agreement signed by Mr. Tellis and a Notice of Dismissal of the EEOC Charge ("Effective Date of Agreement")
>
> 4.5. Mr. Tellis has been allowed at least twenty-one (21) days to consider this Agreement before he signs it.

2

*[initials]*

Initb

WA 5 2092050 5 5507 70 09425

4.6.   Mr. Tellis further acknowledges that: (a) he took advantage of this period to consider this Agreement before signing it; (b) he carefully read this Agreement; (c) he fully understands this Agreement; and (c) he is entering into this Agreement voluntarily.

4.7.   If Mr. Tellis signs this Agreement before the end of the twenty-one (21) day period, it will be his voluntary decision to do so because he has decided that he does not need any additional time to decide whether to sign this Agreement. He also understands that he does not have more than twenty-one (21) days to sign this Agreement. If he does not sign this Agreement by the end of the twenty-one (21) day period, he understands that it will become null and void.

5.   **No Admission.**  This Agreement shall not be considered as evidence of any violation of any statute or law, or any wrongdoing or liability on the part of Alaska or any Released Party. This Agreement also shall not be considered as evidence of any wrongdoing by Mr. Tellis.

6.   **Mutual Non-Disparagement.**  Mr. Tellis agrees to refrain from making any public statements (or authorizing any statements to be reported as being attributed to Mr. Tellis) that are critical, derogatory or which may tend to injure the reputation or business of Alaska. Alaska will agree to use its best efforts to cause the officers, directors, and authorized spokespersons of Alaska to refrain from making any public statements (or authorizing any statements to be reported as being attributed to Alaska), that are critical, derogatory or which may tend to injure the reputation or business of Mr. Tellis, and Alaska shall instruct such officers, directors and spokespersons to refrain from making such statements.

7.   **No Contact.**  Mr. Tellis agrees not to contact any employees of Alaska Airlines or Horizon Air, in any manner whatsoever using Alaska phone numbers, Alaska/Horizon email addresses, or in person by appearing at Alaska/Horizon's premises. Mr. Tellis agrees not to attempt to contact, communicate with, observe, hold under surveillance, or be in the presence of, at any time, in any manner, any employee of Alaska Airlines/Horizon Air who holds a supervisory level or higher position. By way of limited exception, Mr. Tellis may contact Alaska Airlines/Horizon Air, as may be reasonable and appropriate at the direction of any company with whom he may be employed in the future, except

3

DWT 22516504v3 0041731 000171

any company wholly-owned by Mr. Tellis. Alaska agrees to deliver Mr. Tellis' tool box to his home using a delivery service. Mr. Tellis acknowledges and agrees that any breach of this provision shall be considered a material breach of the Agreement, shall relieve Alaska of its obligations under the Agreement, and shall entitle Alaska to recoup any or all of the payments made to Mr. Tellis hereunder.

8.    **Binding Agreement.** This Agreement is binding on and shall inure to the benefit of the parties, as well as their heirs, administrators, representatives, executors, successors, and assigns.

9.    **No Attorneys' Fees or Costs.** The Parties acknowledge that each are responsible for their own attorneys' fees and costs  and agree that neither party shall be required to pay any attorneys' fees or costs of any kind incurred by the other party in connection with this Agreement, except as specified in paragraph 1.

10.    **Severability.** If any portion of this Agreement is held to be invalid or unenforceable for any reason, the remaining covenants shall remain in full force and effect to the maximum extent permitted by law.

11.    **Entire Agreement.** This Agreement constitutes the entire agreement of the parties with respect to the matters covered in this Agreement and supersedes any previous agreements, whether written or oral.

12.    **Applicable Law.** This Agreement shall in all respects, including all matters of construction, validity and performance, be governed by and construed and enforced in accordance with the laws of the State of Washington without regard to choice of law principles. Any legal proceeding in connection herewith shall be brought in the United States District Court for the Western District of Washington.

13.    **Tender Back Provision.** Should Mr. Tellis ever attempt to challenge the terms of this Agreement, attempt to obtain an order declaring this Agreement to be null and void, or institute litigation against Alaska or any other Released Party based upon a Claim that is covered by the terms of the release contained in this Agreement, he will, as a condition precedent to such action, repay all amounts paid to him under the terms of this Agreement and agree that any future obligations are suspended. Furthermore, if he does not prevail in an action to challenge this Agreement, to obtain an order declaring this Agreement null and void, or in any action against Alaska or any other Released Party based upon a Claim that is covered by the release contained in the Agreement, he shall

4

HVI22009565 6415714647d

pay to Alaska and/or the appropriate Released Party all their costs and attorneys' fees incurred in their defense of this action.

14.    **Counterparts/Facsimiles.** This Agreement may be executed in counterparts. Facsimile signatures shall be given the same force and effect as original signatures.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

Alaska Airlines, Inc.                        Herman Charles Tellis

Scott Leutman                                Herman Charles Tellis
Its: Human Resources Manager

Date:  6 - 3 - 14                            Date: 5 - 13 - 14

Initials

TELLIS EXHIBIT 4



(https://www.cornell.edu)Cornell University Law School (http://www.lawschool.cornell.edu/)Search Cornell (https://www.cornell.edu/search/)

CFR (/cfr/text) › Title 29 (/cfr/text/29) › Subtitle B (/cfr/text/29/subtitle-B) › Chapter XIV (/cfr/text/29/chapter-XIV) › Part 1625 (/cfr/text/29/part-1625) › Subpart B (/cfr/text/29/part-1625/subpart-B) › Section 1625.23

# 29 CFR 1625.23 - Waivers of rights and claims: Tender back of consideration.

eCFR (/cfr/text/29/1625.23?qt-ecfrmaster=0#qt-ecfrmaster)
Authorities (U.S. Code) (/cfr/text/29/1625.23?qt-ecfrmaster=1#qt-ecfrmaster)
Rulemaking (/cfr/text/29/1625.23?qt-ecfrmaster=2#qt-ecfrmaster)

prev (/cfr/text/29/1625.22) | next

### §1625.23 Waivers of rights and claims: Tender back of consideration.

(a) An individual alleging that a waiver agreement, covenant not to sue, or other equivalent arrangement was not knowing and voluntary under the ADEA is not required to tender back the consideration given for that agreement before filing either a lawsuit or a charge of discrimination with EEOC or any state or local fair employment practices agency acting as an EEOC referral agency for purposes of filing the charge with EEOC. Retention of consideration does not foreclose a challenge to any waiver agreement, covenant not to sue, or other equivalent arrangement; nor does the retention constitute the ratification of any waiver agreement, covenant not to sue, or other equivalent arrangement.

(b) No ADEA waiver agreement, covenant not to sue, or other equivalent arrangement may impose any condition precedent, any penalty, or any other limitation adversely affecting any individual's right to challenge the agreement. This prohibition includes, but is not limited to, provisions requiring employees to tender back consideration received, and provisions allowing employers to recover attorneys' fees and/or damages because of the filing of an ADEA suit. This rule is not intended to preclude employers from recovering attorneys' fees or costs specifically authorized under federal law.

(c)*Restitution, recoupment, or setoff.*

(1) Where an employee successfully challenges a waiver agreement, covenant not to sue, or other equivalent arrangement, and prevails on the merits of an ADEA claim (/definitions/index.php?
width=840&height=800&iframe=true&def_id=2e104633ab6bb6884217fbaea2a7ac07&term_occur=1&term_src=Title:29:Subtitle:B:Chapter:XIV:Part:1625:Subpart:B:1625.23), courts have the discretion to determine whether an employer is entitled to restitution, recoupment or setoff (hereinafter, "reduction") against the employee's monetary award. A reduction never can exceed the amount recovered by the employee, or the consideration the employee received for signing the waiver agreement, covenant not to sue, or other equivalent arrangement, whichever is less.

(2) In a case involving more than one plaintiff, any reduction must be applied on a plaintiff-by-plaintiff basis. No individual's award can be reduced based on the consideration received by any other person (/definitions/index.php?
width=840&height=800&iframe=true&def_id=9324fdda06d36c0294e4cd321a0d6edb&term_occur=1&term_src=Title:29:Subtitle:B:Chapter:XIV:Part:1625:Subpart:B:1625.23),

(d) No employer may abrogate its duties to any signatory under a waiver agreement, covenant not to sue, or other equivalent arrangement, even if one or more of the signatories or the EEOC successfully challenges the validity of that agreement under the ADEA.

[ 65 FR 77446 (https://www.law.cornell.edu/rio/citation/65_FR_77446), Dec. 11, 2000]

## CFR Toolbox

Wex: Labor Law: Overview (/wex/labor)
View eCFR (http://www.ecfr.gov/cgi-bin/text-idx?c=ecfr&tpl=/ecfrbrowse/Title29/29cfr1625_main_02.tpl)
Table of Popular Names (/topn)
Parallel Table of Authorities (/ptoa)