THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HERMAN CHARLES TELLIS,

                Plaintiff,

    v.

ALASKA AIRLINES, INC.,

                Defendant.

Case No. 17-00901-RAJ

**ORDER**

This matter comes before the Court on Plaintiff's Motion for Leave to Amend (Dkt. # 38) and Defendant's Motion for Judgment on the Pleadings (Dkt. # 23). Plaintiff is proceeding *pro se*. Both Motions are opposed. Dkt. ## 28, 40. For the reasons that follow, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Leave to Amend (Dkt. # 38), and **GRANTS** Defendant's Motion for Judgment on the Pleadings (Dkt. # 23).

**I.    BACKGROUND**

Plaintiff Herman Charles Tellis was hired by Defendant Alaska Airlines, Inc. as a Maintenance and Engineering Mechanic in 1990. Dkt. # 1-3. Prior to his resignation, Plaintiff made several complaints regarding Defendant to the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* On February 8, 2013, Defendant notified Plaintiff that he could sign a resignation agreement and a settlement and release agreement in lieu of an involuntary termination. *Id.* at ¶ 5.8. Plaintiff signed both

ORDER - 1

agreements. *Id*. The settlement agreement contained a general release of claims and a "No Reemployment" provision. Dkt. # 38. Several days later, Plaintiff revoked the settlement and release agreement. Dkt. # 1-3 Ex. 1.

In November of 2013, the parties negotiated a new settlement agreement. Dkt. ## 40, 41. Defendant represents that this new settlement agreement was actually three settlement agreements. Dkt. # 40. The first is entitled, "Amendment to Confidential Settlement and Release Agreement," and refers back to the original February 2013 settlement agreement. Dkt. # 41 Ex. 1. The second settlement agreement was solely an Age Discrimination in Employment Act ("ADEA") settlement and release agreement ("ADEA Agreement"). Dkt. # 41 Ex. 2. The third settlement agreement is not at issue in this dispute. Plaintiff revoked the ADEA Agreement on November 12, 2013. Dkt. # 1-3 Ex. 1.

On March 31, 2014, Plaintiff filed an EEOC complaint, alleging that Defendant denied him pay and refused to return his work tools in retaliation for revoking his settlement agreements. Dkt. # 1-3 at ¶ 5.10. On May 13, 2014, Plaintiff executed a new settlement and release agreement with Defendant that solely covered his ADEA claims. Dkt. # 1-3 Ex. 3. The EEOC then closed its investigation of the March 31, 2014 complaint, citing the May 13, 2014 settlement and release agreement. Dkt. # 1-3 Ex. 2. Plaintiff filed another EEOC complaint on September 28, 2015, alleging that "a waiver from Defendant became effective that violated the Older Workers Benefit Protection Act ("OWBPA"): because "consideration was not paid as agreed," the "mandatory 21 days to consider agreement tolled-out," language allowing him a 7-day revocation period was omitted, and "material changes were made to the agreement absent [Plaintiff's] acknowledgment." Dkt. # 25. The EEOC closed its investigation of this complaint on November 4, 2015.

Plaintiff filed his original Complaint in King County Superior Court on May 22, 2017, alleging that Defendant discriminated and retaliated against him in violation of

ORDER - 2

the ADEA. Dkt. # 1. Defendant removed this case to the Western District of Washington shortly after. *Id.* On December 5, 2017, Plaintiff attempted to file a First Amended Complaint, which added a state law unlawful restraint of trade claim. Dkt. # 20. The Court struck Plaintiff's filing for failure to comply with the Federal Rules of Civil Procedure. Dkt. # 22. On December 8, 2017, Defendant filed a Motion for Judgment on the Pleadings. Dkt. # 23. Plaintiff then moved for leave to file a Second Amended Complaint, again to add an unlawful restraint of trade claim. Dkt. # 26. Defendant opposed Plaintiff's motion, and Plaintiff voluntarily withdrew it on January 10, 2018. Dkt. # 34.

On January 16, 2018, Plaintiff applied for a Supervisor Line Maintenance position with Defendant. Dkt. # 38 Ex. 1. On January 26, 2018, Plaintiff filed another EEOC complaint, alleging age discrimination because he had "heard nothing favorable from Alaska Airlines with regard to the position." *Id.* The EEOC closed its investigation into Plaintiff's complaint and issued a Notice of Right to Sue to Plaintiff on February 8, 2018. Dkt. # 39. Plaintiff then filed a Motion to Amend one day later. Dkt. # 38. The proposed Third Amended Complaint again adds an unlawful restraint of trade claim and adds an additional ADEA retaliation claim. Dkt. # 38 Ex. 1.

**II.  LEGAL STANDARD**

A. Motion to Amend

Amendment to pleadings is governed by Federal Rule of Civil Procedure 15(a). Rule 15(a) "provides that a party's right to amend as a matter of course terminates 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate a decision on the merits, rather than on the

ORDER - 3

pleadings or technicalities." *Roth v. Garcia Marquez,* 942 F.2d 617, 628 (9th Cir. 1991); *United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981). Further, the policy of favoring amendments to pleadings should be applied with "extreme liberality." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987).

Against this extremely liberal standard, the Court may deny leave to amend after considering "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). But "[n]ot all of the factors merit equal weight ... it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* The party opposing amendment bears the heavy burden of overcoming this presumption. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

    B. <u>Motion for Judgment on the Pleadings</u>

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). The standard applied on a Rule 12(c) motion is essentially the same as that applied on a Rule 12(b)(6) motion for failure to state a claim: "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Id*. The Court is not required to accept as true legal conclusions or formulaic recitations of the elements of a cause of action unsupported by alleged facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion for judgment on the pleadings, a court may consider material which is properly submitted as part of the complaint without

ORDER - 4

converting the motion into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

**III.  DISCUSSION**

A. Motion to Amend

As a preliminary matter, Plaintiff represents in his Reply that he no longer asserts an unlawful restraint of trade claim. As such, the Court will assume that references related to restraint of trade in Plaintiff's proposed TAC were added by mistake and will not address Defendant's arguments regarding that claim here.

Defendant argues that Plaintiff should be denied leave to amend his Complaint because the proposed amendments are futile. Plaintiff's proposed Third Amended Complaint ("TAC") amends his age discrimination and retaliation claims to include the allegation that Plaintiff "heard nothing favorable" after he applied for a Supervisor of Line Maintenance position with Defendant, and adds an additional ADEA retaliation claim based on Defendant's response to his application and the same factual allegations as his other age discrimination and retaliation claims. Dkt. # 38-1.

Defendant argues that the new facts alleged in the proposed TAC are insufficient to state a prima facie case of age discrimination or retaliation. This type of argument is not appropriately raised at this time. At this stage in the proceedings, assuming that Plaintiff will not be able to state a claim based on his proposed amendments is the equivalent of deciding a motion to dismiss. The legal standards for deciding whether Plaintiff has failed to state a claim, and those governing amendment of pleadings are entirely different. Just because a complaint fails to state a claim in its current state does not automatically mean that further amendment would be futile.

Defendant also argues that that Plaintiff violated his settlement agreements when he applied for the position with Defendant in January of 2018. Because these actions constituted an alleged breach of these agreements, Defendant argues that any claims based on these actions are futile. Defendant's arguments are based on the assumption that these

ORDER - 5

settlement agreements are enforceable. While Plaintiff alleges that the May 13, 2014 settlement and release agreement ("May 2014 Agreement") is unenforceable, he does not dispute that that the November 2013 Amendment to Confidential Settlement and Release Agreement ("Amended Agreement") is still in effect. Defendant contends that Plaintiff's actions violated the No Reemployment provision of the Amended Agreement, and the "No Contact" provision of the May 2014 Agreement. With regards to the No Contact provision of the May 2014 Agreement, accepting Defendant's argument that Plaintiff's violation of this provision makes further amendment of the Complaint futile means accepting its representation that this Agreement is enforceable. Again, at this stage in the proceedings, it is inappropriate to make this determination, and the Court will not deny Plaintiff leave to amend based on this type of assumption.

Because the parties do not dispute the enforceability of the Amended Agreement, the Court will now consider the effect of the No Reemployment provision. The February 2013 settlement and release agreement ("February 2013 Agreement") included a No Reemployment provision which states:

> [Plaintiff] understands and agrees that he waives any right that he may have to reinstatement and/or reemployment by [Defendant] or its affiliates and/or subsidiaries . . . and that [Plaintiff] has not and will not apply for or seek future employment with [Defendant], its affiliates and/or subsidiaries. [Plaintiff] agrees that [Defendant], including its affiliates and subsidiaries, has no obligation to consider [Plaintiff] for future employment or assignment. [Defendant], its affiliates, and/or subsidiaries may reject any future applications by [Plaintiff] without recourse.

Dkt. # 41 Ex. 1. While the February 2013 Agreement was revoked by Plaintiff, Defendant contends that this No Reemployment provision was revived by the subsequent Amended Agreement, which states in part, that "the Parties reaffirm their agreement to abide by the terms of the [February 2013] Agreement," that the Amended Agreement and the February 2013 Agreement "supersedes any previous agreements," and that "[a]ll other non-

ORDER - 6

conflicting terms of the [February 2013 Agreement] remain in full force and effect and apply to this [Amended Agreement]." Dkt. # 41 Ex. 1.

Plaintiff does not counter Defendant's argument in his Response. However, Plaintiff appears to argue in the proposed TAC that ADEA Agreement is independent and "not affected by terms of other agreements." Dkt. # 38 Ex. 1. Plaintiff argues that the No Reemployment provision does not apply to his January 2018 job application because this application is the basis of his ADEA claim, and ADEA claims are not affected or barred by the No Reemployment provision because they are "covered" by the May 2014 Agreement. While Plaintiff's actions may or may not be affected by an ADEA-related settlement agreement, this does not preclude them from also being affected by the Amended Agreement. The No Reemployment provision specifically states that Defendant has no obligation to consider Plaintiff for future employment. Plaintiff admits that he had "no intention to revoke the entire [November 2013 settlement agreement]" when he revoked the ADEA portion. Dkt. # 28. If the Amended Agreement is enforceable, Plaintiff's actions are a clear violation of the No Reemployment provision.

However, Plaintiff also appears to argue that the No Reemployment provision is in itself, retaliation or discrimination in violation of the ADEA. Plaintiff further argues that the No Reemployment provision violates 29 CFR § 1625.22(b)(4), (c)(2), (i)(2), and (i)(3). To the extent that Plaintiff is asserting that the provision is the basis for an ADEA discrimination or retaliation claim, his Complaint is untimely. A lawsuit for discrimination must be filed in federal or state court within 90 days of the employee's receipt of a Notice of Dismissal from the EEOC. 29 C.F.R. § 1626.17(c)(3). The Notice of Dismissal notifies the complainant that his or her "right to file a civil action against the respondent . . . under the ADEA will expire 90 days after receipt of such notice." *Id*. Plaintiff signed the settlement and release agreements with the No Reemployment provision on February 8, 2013, and November 5, 2013. Plaintiff filed one EEOC complaint on March 31, 2014. Dkt. # 1-3 Ex. 1. The EEOC closed its investigation of

ORDER - 7

that complaint on January 28, 2015. Dkt. # 1-3 Ex. 3. Plaintiff filed another EEOC complaint on September 28, 2015. Dkt. # 25. The EEOC closed its investigation of the second complaint on November 4, 2015. Plaintiff filed this lawsuit on May 22, 2017, or over one year after the 90 day time limit expired. Assuming that Plaintiff properly exhausted his administrative remedies, an ADEA discrimination or retaliation claim based on the No Reemployment provision would be untimely.

To the extent that Plaintiff alleges that the No Reemployment provision violates 29 C.F.R. § 1625.22, Defendant argues that the regulation is inapplicable to the provision because it only applies to waivers of ADEA claims. The Court makes no judgment as to whether the No Reemployment provision is an ADEA wavier, however, the language of the provision states that "Defendants . . . may reject any future applications by Plaintiff without recourse." To the extent that this phrase encompasses a waiver of Plaintiff's ADEA claims, it follows that the regulation would be applicable. Defendant also argues that this type of provision is expressly permitted by 29 C.F.R. § 1625.22. Section 1625.22(c)(2) states that, "the ADEA does not bar, in a waiver that otherwise is consistent with statutory requirements, the enforcement of agreements to perform future employment-related actions such as the employee's agreement to retire or otherwise terminate employment at a future date." Defendant contends that there is "no substantive difference between enforcing an employee's agreement to retire and enforcing an employee's agreement not to apply for a new position with the company." This argument is unpersuasive. If the cited regulation applies to the No Reemployment provision, and it qualifies as an agreement to "perform future employment-related actions," then it must also be consistent with statutory requirements in order for that Section 1625.22(c)(2) to apply. It is unclear at this time whether this is the case. Defendant has not shown that amendment of the Complaint with regards to this claim would be futile.

To the extent that Plaintiff moves for leave to amend his complaint to allege any ADEA discrimination or retaliation claims based on the February 2013 Agreement or the

ORDER - 8

Amended Agreement, his Motion is **DENIED.** Such claims are untimely, and amendment would be futile. To the extent that Plaintiff moves for leave to amend his complaint to allege a violation of 29 C.F.R. § 1625.22, his Motion is **GRANTED.** Dkt. # 38.

B. Motion for Judgment on the Pleadings

In deciding Plaintiff's Motion to Amend, the Court necessarily considered arguments brought in Defendant's Motion for Judgment on the Pleadings. "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1550 (9th Cir. 1990). While Defendant's Motion does not address any new claims that may be included in Plaintiff's Amended Complaint, there is no material issue of fact as to the timeliness of several of Plaintiff's existing claims, such that judgment on the pleadings is proper.

Plaintiff alleges that Defendant discriminated and retaliated against him in violation of the ADEA by omitting language allowing him a 7-day revocation period from the May 2014 Agreement, by including a tender-back provision in the May 2014 Agreement, and by failing to pay him a year's worth of wages (from May 10, 2013 to May 13, 2014, the day he signed the May 2014 Agreement) as well as a bonus for calendar year 2013. Dkt. # 1-3 ¶¶ 6-6g. Plaintiff filed one EEOC complaint on March 31, 2014, alleging that Defendant retaliated against him because he revoked the February 2013 Agreement and the Amended Agreement in violation of the ADEA. Dkt. # 1-3 Ex. 1. The EEOC closed its investigation of that complaint on January 28, 2015. Dkt. # 1-3 Ex. 3. Plaintiff filed another EEOC complaint on September 28, 2015, alleging that "a waiver from Defendant became effective that violated the Older Workers Benefit Protection Act ("OWBPA"): because "consideration was not paid as agreed," the "mandatory 21 days to consider agreement tolled-out," language allowing him a 7-day

ORDER - 9

revocation period was omitted, and "material changes were made to the agreement absent [Plaintiff's] acknowledgment." Dkt. # 25. The EEOC closed its investigation of the second complaint on November 4, 2015.

As noted above, to the extent that Plaintiff's Complaint alleges ADEA discrimination or retaliation claims based on the February 2013 Agreement or the Amended Agreement, such claims are untimely. Plaintiff's remaining claims relate to the May 2014 Agreement. Plaintiff filed his EEOC complaint regarding the May 2014 Agreement on September 28, 2015. The EEOC sent a Notice of Dismissal of this complaint on November 4, 2015. Allowing three days for service by mail, the 90-day limitation period for filing a lawsuit in state or federal court expired on February 6, 2016. Plaintiff filed this lawsuit on May 22, 2017, or over a year after the deadline for filing a civil suit. Therefore, Plaintiff's ADEA claims related to the May 2014 Agreement are also untimely.

Plaintiff argues that he is entitled to equitable tolling or equitable estoppel of the limitations period for bringing this suit. Under federal law, equitable tolling is applied "sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The equitable tolling doctrine focuses on whether there was excusable delay by the plaintiff. *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008). "Equitable estoppel, on the other hand, focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Id*.

Plaintiff makes no argument that he diligently pursued his claims or that the delay of over a year to file this lawsuit constitutes excusable delay. Plaintiff alleges no facts to support an argument that equitable tolling applies to excuse Plaintiff's failure to initiate these proceedings within the 90 day limitations period. Plaintiff's arguments for the application of the equitable estoppel doctrine are similarly unpersuasive. Plaintiff makes several allegations regarding the alleged unlawful circumstances under which he signed

ORDER - 10

the May 2014 Agreement, however he makes no argument that Defendant obstructed, impeded, or otherwise prevented him from filing a lawsuit against Defendant within the 90 day limitations period after the EEOC issued a Notice of Dismissal of his complaint, or even in the year before he filed this lawsuit. Therefore, equitable tolling and equitable estoppel do not serve to excuse Plaintiff's failure to file his claim within the limitations period.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Leave to Amend his Complaint. Dkt. # 38. Plaintiff shall file an amended complaint within twenty days of the date of this order.

To the extent that Plaintiff's Complaint alleges ADEA discrimination or retaliation claims based on the February 2013 Agreement, the Amended Agreement, and the May 2014 Agreement, Defendant's Motion for Judgment on the Pleadings is **GRANTED.** Dkt. # 23.

Dated this 31st day of May, 2018.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

ORDER - 11